UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT M. GLEN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>EXPEDIA, INC.; EXPEDIA GROUP, INC.; HOTELS.COM, L.P.; and HOTELS.COM GP, LLC,<br><br>　　　　　　　Defendants. | No.<br><br>COMPLAINT<br><br>JURY DEMAND |

## **COMPLAINT**

Plaintiff Robert M. Glen ("**Glen**") hereby files this action against Defendants Expedia, Inc. ("**Expedia**"), Expedia Group, Inc. ("**Expedia Group**"), Hotels.com, L.P. ("**Hotels.com**"), and Hotels.com GP, LLC ("**Hotels.com GP**"), and respectfully states as follows:

### I.   INTRODUCTION

1.　　This action arises under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et seq.* (the "**Act**"), also known as the LIBERTAD Act or the Helms-Burton Act.

COMPLAINT - 1

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

2. Title III of the Act provides U.S. nationals whose property in Cuba was confiscated by the communist Cuban government with a private right of action against those who traffic in, or participate in the trafficking of, that property.

3. Glen holds a claim to two beachfront properties located in Varadero, Cuba, on the Hicacos Peninsula. Varadero is one of Cuba's most popular beach resort towns, featuring one of the Caribbean's best beaches and dozens of hotels and resorts that attract tourists and vacationers from around the world.

4. Following the communist Cuban revolution, the properties were confiscated from Glen's family by the Cuban government. After the revolution, Glen's family fled Cuba, and Glen later became a naturalized U.S. citizen.

5. Today, the two properties are the site of four separate beachfront resorts, which together feature over 1,400 guestrooms, in addition to dozens of swimming pools, restaurants, and bars.

6. Under the Act, a person is liable for trafficking in confiscated property if that person, among other things, knowingly "engages in a commercial activity using or otherwise benefiting from confiscated property," or knowingly "participates in, or profits from, trafficking . . . by another person."

7. Defendants operate online booking websites, and provide online booking services for hotels in Cuba, including the four beachfront resorts on the properties confiscated from Glen's family: the Iberostar Tainos, the Meliá Las Antillas, the Blau Varadero, and the Starfish Varadero.

8. By facilitating bookings at these hotels, Defendants are engaging in commercial activity that uses or otherwise benefits from Glen's confiscated property. Defendants are also participating in, and profiting from, trafficking committed by the hotels themselves.

9. Because Defendants have trafficked in confiscated property in violation of the Act, they are subject to Glen's private action for civil damages under Title III, measured as the

COMPLAINT - 2

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

20285 00001 ii25er37sd

greater of the current fair market value of the property, or the value of the property at the time of confiscation plus interest.

10. Glen accordingly brings this statutory action to vindicate his claim to confiscated property and to obtain the compensation that he is rightfully entitled to under the Act.

## II. PARTIES

11. Plaintiff Robert M. Glen is an individual residing in Plano, Texas. Glen is a naturalized United States citizen and a "United States national" pursuant to 22 U.S.C. § 6023(15).

12. Defendant Expedia, Inc. is a corporation organized in Washington, with a principal office address of 333 108th Ave. NE, Bellevue, Washington 98004. Expedia may be served through its registered agent at the following address: National Registered Agents, Inc., 711 Capital Way South, Suite 204, Olympia, Washington 98501.

13. Defendant Expedia Group, Inc. is a corporation organized in Delaware, with a principal office address of 333 108th Ave. NE, Bellevue, Washington 98004. Expedia Group may be served through its registered agent at the following address: National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

14. Expedia Group was previously named Expedia, Inc. (and not the same Expedia, Inc., organized in Washington, and also named as a Defendant herein). On March 26, 2018, Expedia Group became the name of the company through a filing made with the Secretary of State of the State of Delaware.

15. Expedia Group ultimately owns and controls Expedia.

16. Defendant Hotels.com, L.P. is a limited partnership organized in Texas. Hotels.com is registered with the Washington Secretary of State as a foreign limited partnership with a principal office street address in Dallas, Texas, and a principal office mailing address of 333 108th Ave. NE, Bellevue, Washington 98004. Hotels.com may be served in Washington

COMPLAINT - 3

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

through its registered agent at the following address: National Registered Agents, Inc., 711 Capital Way South, Suite 204, Olympia, Washington 98501.

17. Defendant Hotels.com GP, LLC is a Texas limited liability company, with a principal office address of 333 108th Ave. NE, Bellevue, Washington 98004. Hotels.com GP is the general partner of Hotels.com. Hotels.com GP may be served through its registered agent at the following address: National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

18. Expedia Group ultimately owns and controls Hotels.com and Hotels.com GP.

### III. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Glen's claim arises under 22 U.S.C. § 6082 and the amount-in-controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

20. This Court may exercise personal jurisdiction over Expedia by virtue of its incorporation and principal office in Washington. This Court may exercise personal jurisdiction over Expedia Group by virtue of its principal office in Washington. This Court may exercise personal jurisdiction over Hotels.com GP by virtue of its principal office in Washington. This Court may exercise personal jurisdiction over Hotels.com by virtue of its registration with the Washington Secretary of State, listing its principal mailing address in Washington. This Court may also exercise personal jurisdiction over Hotels.com by virtue of its general partner, Hotels.com GP, managing Hotels.com's business from within Washington.

21. This Court may also exercise personal jurisdiction over Defendants by virtue of Defendants conducting business in this State, including through their agents. Namely, Defendants operate online booking websites from within Washington, and Plaintiff's claims arise out of Defendants' operation of online booking websites from within this State.

22. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State in which this District is located. Venue in this District is alternatively

COMPLAINT - 4

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

proper under 28 U.S.C. § 1391(b)(2) because Defendants are trafficking in Glen's property from within this District. Venue in this District is alternatively proper under 28 U.S.C. § 1391(b)(3).

23. The Seattle Division of this Court is proper because it serves King County, where a substantial part of the events or omissions occurred, where Defendants Expedia, Inc., Expedia Group, and Hotels.com GP have their principal place of business, and where Hotels.com has a principal mailing address.

## IV. STATEMENT OF FACTS

**A.  Passage and Implementation of the Act**

24. The Act became effective March 12, 1996.

25. Among the Act's legislative purposes is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime."

26. Title III of the Act ("**Title III**") establishes a private right of action for money damages against any person who "traffics" in confiscated property.

27. Glen did not previously have an opportunity to bring a private right of action because, until recently, private rights of action under Title III were suspended pursuant to the authority given to the President of the United States by Congress under the Act.

28. The President has delegated this suspension authority to the United States Secretary of State. On March 4, 2019, the State Department announced a partial lifting of the suspension to permit private actions to proceed, beginning March 19, 2019, against Cuban entities or sub-entities identified on the State Department's restricted entities list. On or about April 2, 2019, the partial lifting of the suspension was extended again through May 1, 2019. Most recently, on April 17, 2019, the State Department announced a full lifting of the suspension, beginning May 2, 2019.

COMPLAINT - 5

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

29. In his remarks regarding the decision, Secretary of State Pompeo made clear that "[e]ffective May 2nd . . . the right to bring an action under Title III of the Libertad Act will be implemented in full."

**B.   Glen's Claim to Property in Cuba**

30. Glen is the owner of property located in Varadero, Cuba that was originally owned by Glen's great-grandfather, Sergio de la Vega, who lived in Cárdenas, across the bay from the Hicacos Peninsula. Glen's great-grandfather traveled by boat to the peninsula and built improvements upon it.

31. Ownership of the property later passed to Glen's grandfather, Manuel de la Vega. When Manuel died in 1928, the properties passed to his wife, Ana Maria Martinez Andreu ("**Martinez Andreu**"), Glen's grandmother.

32. Manuel and Martinez Andreu divided their property into two, contiguous plots. The first was known as "**Blancarena**," and included 280 meters of ocean frontage.

33. The second was known as "**Cotepen**" (short for "Co-Territorial Peninsula") and included 715 meters of ocean frontage. (Together, Blancarena and Cotepen are the "**Glen Properties**").

34. Cotepen is contiguous to Blancarena and sits directly to the east of Blancarena. Cotepen and Blancarena are of equal depth, each extending southward toward the present-day Autopista Sur, the main road that traverses the peninsula.

35. When Martinez Andreu died, Blancarena passed to Elvira de la Vega Martinez ("**Elvira**"), one of Martinez Andreu's two daughters, and Cotepen passed to Ana Maria de la Vega Martinez ("**Ana Maria**"), Martinez Andreu's other daughter. Elvira is Glen's mother. Ana Maria is Glen's aunt.

36. Elvira and Ana Maria exercised ownership over Blancarena and Cotepen and worked to develop the land. In the late 1950s, Elvira considered selling a portion of Blancarena and subdividing it, but her plans were interrupted by the revolution.

COMPLAINT - 6

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

37.     Maps and surveys drawn in 1958, just prior to the Cuban revolution, reflect the location of the Glen Properties on the peninsula, including in connection with the construction of a canal (still in existence today) directly to the south of the properties.

38.     After January 1, 1959, and in connection with Cuban revolution, the communist Cuban government confiscated the Glen Properties.

39.     Following the revolution, Ana Maria and Elvira fled Cuba.

40.     When Ana Maria and Elvira died, ownership of Blancarena and Cotepen passed solely to Glen.

41.     Like Ana Mara and Elvira, Glen has continued to maintain a claim to the Glen Properties.

42.     On information and belief, the Cuban government maintains possession of the Glen Properties.

43.     The Cuban government has not paid any compensation to Glen or his family for its seizure of the Glen Properties. Instead, as detailed below, the Cuban government has worked with hotel chains to build, develop, and operate four beachfront resorts on the Glen Properties.

**C.     The Beachfront Hotels Occupying the Glen Properties**

44.     Varadero sits on the Hicacos Peninsula. The narrow peninsula, which is approximately eleven miles long but only a mile or so wide, extends in a northeasterly direction from the northern side of the Cuban mainland. The northern side of the peninsula faces the open ocean and features miles of contiguous, white-sand beach. The southern side of the peninsula faces the Bay of Cárdenas.

45.     Today, Varadero is one of Cuba's most popular beach resort towns, featuring one of the Caribbean's best beaches, dozens of hotels and resorts, a nature reserve, and other amenities.

COMPLAINT - 7

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

46. According to TripAdvisor's 2019 Travelers' Choice awards, Varadero is the second-best beach in the world. And according to Lonely Planet, Varadero boasts a beach that is "undoubtedly one of the Caribbean's best."

47. Because of its world-renowned beach and accessibility, Varadero is a popular destination for tourists from around the world, particularly Europe and Canada. The resort town is easily accessible from Juan Gualberto Gómez Airport, one of Cuba's busiest international airports.

48. The Glen Properties are the site of four separate beachfront hotels, which run contiguously from west to east along the northern, beachfront side of the peninsula.

49. Blancarena is the site of Iberostar Tainos, operated by Spanish hotel chain Iberostar (the "**Iberostar Tainos**"). The Iberostar Tainos is a four-star, all-inclusive reports featuring 272 guestrooms.

50. Cotepen is the site of three resorts. The first is currently known as Meliá Las Antillas (the "**Las Antillas**"), operated by Spanish hotel chain Meliá Hotels International, on the site of a former Beaches-brand resort. Las Antillas is a four-star, adults-only, all-inclusive resort featuring 350 guestrooms. The second is known as the Blau Varadero (the "**Blau**"). The Blau is an adults-only, all-inclusive resort featuring 395 guestrooms. The third is known as the Starfish Varadero (the "**Starfish**"). The Starfish is a family friendly, all-inclusive resort featuring 411 rooms. (Together, the Iberostar Tainos, Las Antillas, Blau, and Starfish are the "**Subject Hotels**").

51. In addition to their over 1,400 guestrooms, the Subject Hotels also feature restaurants, bars, swimming pools, and other amenities.

52. The Subject Hotels have never paid any compensation to Glen or his family to operate on the Glen Properties. Nor do the Subject Hotels have Glen's authorization to do so.

COMPLAINT - 8

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**D.     Expedia Group's Business**

53.     Expedia Group markets itself as "the world's travel platform" and "the world's largest online travel company."

54.     Expedia Group controls over 200 travel booking websites in over 70 countries, targeting a broad range of travelers, travel suppliers and advertisers.

55.     Among Expedia Group's most known brands are Expedia.com (operated by Defendant Expedia), Hotels.com (operated by Defendants Hotels.com and Hotels.com GP), Travelocity, Orbitz, CheapTickets, Hotwire, trivago, HomeAway, and Vrbo.

56.     The bulk of Expedia Group's operations is comprised of what it refers to as the "Core OTA," short for "Core Online Travel Agencies." The Core OTA provide travel and advertising services to Expedia Group's worldwide customers. Expedia, Hotels.com, Travelocity, Orbitz, and CheapTickets are all within the Core OTA.

57.     Expedia Group brands within the Core OTA facilitate hotel guestroom bookings primarily through two business models: the merchant model and the agency model.

58.     Under the merchant model, Expedia Group brands facilitate the booking of hotel guestrooms from travel suppliers, and Expedia Group brands are the merchant of record for such bookings. In the merchant model, users pay Expedia Group brands directly upon booking a reservation. Expedia Group brands earn a profit in these transactions by contracting in advance with lodging providers to obtain access to guestrooms at negotiated (and discounted) rates.

59.     Under the agency model, Expedia Group brands facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant provider and receiving a commission or fee in the process.

60.     Under either model, Expedia Group brands profit when website users book guestrooms at hotels listed Expedia Group sites.

61.     Expedia Group brands work directly with their travel suppliers to generate consumer demand for their products and to increase their revenues. For example, according to

COMPLAINT - 9

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Expedia Group's annual statement, Expedia Group's "strategic account managers and local hotel market managers work directly with travel suppliers to optimize the exposure of their travel products and brands through our points of sale, including participation in need-based, seasonal and event-driven promotions and experimentation within the new channels we are building."

62. Travel suppliers can also access Expedia Group's proprietary technology to manage, price, and supply their rooms, including by directly uploading information about products and rates from their central reservation systems and to automatically confirm reservations made by Expedia Group users.

63. Expedia Group operates its brands as a consolidated operation. Expedia Group is increasingly marketing this consolidated operation as a value driver for the company.

64. For example, Expedia Group refers to itself as "the world's largest online travel company."

65. Expedia Group also boasts that it, as a company, employs over 22,000 employees worldwide across its global network of brands.

66. Expedia Group coordinates its offerings to consumers across its platforms and brands. For example, Expedia Group uses its superior Expedia.com technology platform to support other brands' websites, including Hotels.com, Hotwire, Travelocity, Orbitz, and CheapTickets.

67. Similarly, Expedia Group cross-sells across brands, including by encouraging customers to bundle bookings across platforms.

68. Indeed, according to a recent earnings call hosted by Expedia Group's CEO, one of the company's recent "strategic themes" has been to "fully leverag[e] the power of our global platform," including by "collaborating across the company and operating more and more as [one] group than ever before."

69. Again according to the CEO, the company is "increasingly unlocking opportunities to cross-sell between brands." This includes Expedia Group's teams "leveraging

COMPLAINT - 10

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

best-in-class systems and technologies across divisions." By way of example, Hotels.com recently migrated to Expedia's system for collecting post-stay reviews, and according to the Expedia Group CEO, Hotels.com "is already benefiting from additional features and an improvement in content."

70. According to Expedia Group, these examples "are just the tip of the iceberg. We have many other opportunities to drive customer and partner-facing innovation and increase operating efficiency by better leveraging the scale of our platform across Expedia Group."

71. So far, the company has been "encouraged" by its focus on collaboration across brands. In other words, whereas Expedia Group brands historically were managed as separate "brand silos," they are now "sharing the technologies across [] businesses," and instead of "just competing with one another," Expedia Group brands now "treat each other like essentially partners."

72. Similarly, Expedia Group's CFO recently stated at a global technology conference that whereas Expedia Group brands were historically "autonomous" and engaged in "friendly competition," Expedia Group is now focused on "bring[ing] the full Expedia Group platform" to each brand and to eliminating duplication of efforts across brands. For example, rather than have two separate teams working on the customer review platforms for Expedia and Hotels.com, "as it turns out, you can just have them working one [platform]."

73. Even a cursory review of the websites operated by Expedia Group's brands confirms the extent of coordination. Listings for specific hotels are remarkably similar across brand websites, including identical copy, identical photographs, identical imagery, identical user reviews, and in many cases, identical prices.

74. Indeed, one July 2019 user review for the Iberostar Tainos "verified" by both Hotels.com and Expedia is identical across the two websites, including commentary by the verified reviewer that he reserved his room through Hotels.com.

COMPLAINT - 11

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

75. Similarly, Terms of Services appended to each brand's website are substantially similar.

76. Expedia Group has been highly successful, in large part due to the consolidation of its core brands, which together report consolidated financial information through Expedia Group. The Core OTA account for the vast majority of Expedia Group's total gross bookings and total revenue.

E. **Expedia and Expedia Group Are Trafficking in the Glen Properties Through the Expedia Brand**

77. Expedia is Expedia Group's original brand, having launched in 1996. Expedia operates a full-service online travel company with localized websites in 33 countries, including www.expedia.com in the United States.

78. Expedia provides online booking services for the Subject Hotels in Cuba.

79. Users can access information about each Subject Hotel using the Expedia website, including each Subject Hotel's amenities and policies, as well as user reviews. Users can also access general information on Expedia's "Cuba Hotel Travel Guide," which advertises that users "can book your flight to Cuba right here on Expedia while you're browsing our top Cuba hotels" and that even for U.S. citizens, "[t]he process of booking travel to Cuba is pretty easy. . . ."

80. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Expedia website or by calling Expedia's toll-free telephone number.

F. **Hotels.com, Hotels.com GP, and Expedia Group Are Trafficking in the Glen Properties Through the Hotels.com Brand**

81. Expedia Group acquired Hotels.com and Hotels.com GP in 2001.

82. Through 90 localized websites worldwide, the Hotels.com brand focuses on marketing and distributing lodging accommodations. According to Expedia Group, because Hotels.com offers only a single product (lodging), it is often Expedia Group's first entry point into a region.

COMPLAINT - 12

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

83. The Hotels.com brand provides online booking services for the Subject Hotels in Cuba.

84. Users can access information about each Subject Hotel using the Hotels.com website, including each Subject Hotel's amenities and policies, as well as user reviews.

85. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Hotels.com website.

**G.     Expedia Group is Trafficking in the Glen Properties Through Its Other Brands**

86. Expedia Group is also trafficking in the Glen Properties through several of its other brands, in addition to Expedia and Hotels.com.

87. Originally founded in 1996, Travelocity is an online booking service acquired by Expedia Group in 2015.

88. Travelocity provides online booking services for the Subject Hotels in Cuba. Travelocity's technology platform is provided by Expedia.

89. Users can access information about each Subject Hotel using the Travelocity website, including each Subject Hotel's amenities and policies, as well as user reviews.

90. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Travelocity website.

91. Orbitz is an online booking service acquired by Expedia Group in September 2015.

92. Orbitz provides online booking services for the Subject Hotels in Cuba. Orbitz's technology platform is provided by Expedia.

93. Users can access information about each Subject Hotel using the Orbitz website, including each Subject Hotel's amenities and policies, as well as user reviews.

94. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Orbitz website.

COMPLAINT - 13

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

95. CheapTickets.com is an online booking service acquired by Expedia Group in September 2015.

96. CheapTickets provides online booking services for the Subject Hotels in Cuba. CheapTickets' technology platform is provided by Expedia.

97. Users can access information about each Subject Hotel using the CheapTickets website, including each Subject Hotel's amenities and policies, as well as user reviews.

98. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the CheapTickets website.

## V.  JURY TRIAL DEMAND

99. Glen hereby demands a trial by jury on all issues so triable.

## VI. CAUSE OF ACTION

### Trafficking in Confiscated Property
### 22 U.S.C. § 6082(a)

100. Glen incorporates by reference all of the allegations set forth in all the preceding paragraphs of the Complaint as if fully set forth herein.

101. Glen is a U.S. national and holds a claim to property that was confiscated by the Cuban government after January 1, 1959, namely, the Glen Properties.

102. Expedia, Expedia Group, Hotels.com, and Hotels.com GP are each a "person" as defined by 22 U.S.C. § 6023(11).

103. Expedia, Expedia Group, Hotels.com, and Hotels.com GP have, and continue to, knowingly traffic in the Glen Properties by engaging in commercial activity using or otherwise benefiting from confiscated property, including by facilitating the booking of guestrooms at the Subject Hotels through the Expedia website, the Hotels.com website, and through websites operated by Expedia Group's other brands, including Travelocity, Orbitz, and CheapTickets.

104. Expedia, Expedia Group, Hotels.com, and Hotels.com GP have, and continue to, knowingly traffic in the Glen Properties by participating in, or profiting from,

COMPLAINT - 14

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

trafficking committed by the Subject Hotels, including the Subject Hotels' operation of beachfront resorts on the Glen Properties.

105. Expedia Group has, and continues to, knowingly traffic in the Glen Properties by participating in, or profiting from, trafficking committed by Expedia Group brands, including Travelocity, Orbitz, and CheapTickets.

106. At all relevant times, Defendants have conducted such trafficking without Glen's authorization.

107. The fair market value of the Glen Properties far exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

108. Glen was not eligible to file a claim with the Foreign Claims Settlement Commission.

109. In compliance with 22 U.S.C. § 6082(a)(3)(B), Glen provided notice of his claims at least 30 days before initiating this action. After the end of the 30-day period, Defendants continued to traffic in the Glen Properties.

### VII.   DEMAND FOR RELIEF

WHEREFORE, Glen respectfully asks the Court to enter judgment in his favor against Defendants:

   a. Awarding actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

   b. Awarding treble damages pursuant to 22 U.S.C. § 6082(a)(3)(B);

   c. Ordering Defendants to pay Glen's reasonable attorneys' fees and costs incurred in this action pursuant to 22 U.S.C. § 6082(a)(1)(A)(ii);

   d. Awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

   e. Granting such other and further relief that the Court deems just and proper.

COMPLAINT - 15

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

DATED this 26th day of September, 2019.

        PACIFICA LAW GROUP LLP

        By *s/     Jamie L. Lisagor*
          Jamie L. Lisagor, WSBA # 39946
          1191 Second Avenue, Suite 2000
          Seattle, WA 98101
          T: (206) 245-1700
          F: (206) 245-1750
          jamie.lisagor@pacificalawgroup.com

        Craig A. Boneau (*pro hac vice* pending)
        cboneau@rctlegal.com
        Ryan M. Goldstein (*pro hac vice* pending)
        rgoldstein@rctlegal.com
        Scott Saldaña (*pro hac vice* pending)
        ssaldana@rctlegal.com
        REID COLLINS & TSAI LLP
        1301 S. Capital of Texas Hwy
        Building C, Suite 300
        Austin, Texas 78746
        T: (512) 647-6100
        F: (512) 647-6129

        *Counsel for Plaintiff Robert M. Glen*

COMPLAINT - 16

20285 00001 ii25er37sd

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750